ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| IDALIE ROSA ARGUINZONI<br><br>Parte Recurrida<br><br>v.<br><br>DRAMYA, CORPORATION REP POR SU PRESIDENTE AYMARD NEGRÓN ENCARNACIÓN<br><br>Parte Peticionaria | TA2026AP00485 | *Apelación, acogida como certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2023CV01925<br><br>Sobre: Incumplimiento de contrato |

Panel integrado por su presidenta, la Jueza Romero García, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de mayo de 2026.

Compareció ante este Tribunal la parte peticionaria, Dramya Corporation (en adelante, "Dramya" o "Peticionaria") mediante un mal denominado recurso de apelación presentado el 9 de mayo de 2026. Nos solicitó la revocación de la *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, "TPI"), el 10 de abril de 2026 y notificada el 13 del mismo mes y año. Dicho dictamen fue objeto de una solicitud de reconsideración que fue denegada mediante *Orden* de 27 de abril de 2026.

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* ante nuestra consideración y *revocamos* la *Orden* recurrida.

**I.**

El presente caso tuvo su origen el 13 de abril de 2023, cuando la Sra. Idalie Rosa Arguinzoni (en adelante, "señora Rosa" o "Recurrida") presentó ante el TPI una "**Demanda**" por incumplimiento de contrato. Específicamente, alegó que mantenía un contrato de arrendamiento

exclusivo con Dramya, cuya vigencia era de dos (2) años. Sostuvo que el Peticionario contrató dolosamente a otros arrendatarios sin su consentimiento y realizó negocios que estaban cobijados dentro de la exclusividad del contrato al que hizo referencia. Arguyó que Dramya le adeudaba la cantidad de $7,750.00 por comisiones dejadas de pagar, a pesar de haber efectuado múltiples gestiones de cobro. Así pues, solicitó que se condenara al Peticionario al pago de dichas comisiones y a una suma ascendente a $25,000.00 por pérdidas de ingresos más una suma $5,000.00 por concepto de las angustias mentales presuntamente sufridas.

Tras varios incidentes procesales, el 17 de mayo de 2023, la señora Rosa presentó una "**Moción Solicitando Emplazamiento por Edictos**" que fue autorizada mediante *Orden* expedida el 19 de mayo de 2023. El 29 de junio de 2023, la Recurrida radicó ante el TPI una "**Moción Solicitando Anotación Rebeldía**", mediante la cual sostuvo que Dramya fue emplazado conforme a derecho y que había transcurrido en exceso del plazo requerido para que este último presentara alegación responsiva, sin que compareciera al pleito. Por tanto, peticionó que se le anotara la rebeldía al Peticionario y se citara la vista a esos efectos.

Ese mismo día, el foro de instancia emitió *Orden* a través de la cual le anotó la rebeldía a Dramya y pautó la vista para el 20 de diciembre de 2023. Luego de varios cambios en la fecha de dicha audiencia, el 21 de diciembre de 2023, quedó señalada la vista en rebeldía. Finalmente, el 14 de mayo de 2024, el foro *a quo* emitió *Sentencia* mediante la cual concluyó que las partes de epígrafe suscribieron un contrato de representación exclusiva que otorgaba a la señora Rosa la exclusividad de los arrendamientos del Peticionario en su centro comercial llamado Cardemar Center. Asimismo, coligió que dicho contrato tenía una vigencia de dos (2) años y que, a pesar de ello, Dramya había utilizado formularios y formas desarrolladas por la Recurrida en su beneficio y sin autorización de ésta. En vista de lo anterior, concluyó que el Peticionario incumplió sus obligaciones contractuales bajo el aludido acuerdo y lo condenó al pago de la suma de $7,750.00, por concepto de comisiones dejadas de percibir, así

como la suma de $25,000.00 por concepto de pérdidas de ingresos producto de las ventas y arrendamientos otorgados durante la vigencia del contrato, más las costas del litigio.

Luego de múltiples incidencias procesales post sentencia, el 24 de marzo de 2026, Dramya presentó una "**Moción para solicitar desestimación por falta de jurisdicción**". Argumentó que no fue emplazada conforme a derecho, toda vez que el lugar donde se efectuaron las gestiones para emplazar personalmente no era la dirección correcta, pues la propiedad en donde se hicieron las mismas fue vendida por la propia señora Rosa. Igualmente, añadió que la Recurrida sabía la dirección del lugar de la residencia del presidente de Dramya y que las gestiones efectuadas no se ajustaron a las disposiciones de la Ley Núm. 164-2009, según enmendada, conocida como la "Ley General de Corporaciones", 14 LPRA secs. 3501 *et seq*. De conformidad con lo anterior, sostuvo que la *Sentencia* dictada en el caso era nula, pues el foro de instancia nunca adquirió jurisdicción sobre su persona. Alternativamente, argumentó que dicho dictamen no fue notificado adecuadamente, ya que la dirección a la que se envió no era la correcta y que procedía remitirla a la dirección postal que surgía del Departamento de Estado y, por tanto, no era ejecutable.

En oposición, la señora Rosa expuso que la *Sentencia* emitida era final y firme, y que al Peticionario se le emplazó por edictos y se notificó dicho dictamen a la dirección de la corporación. Planteó, además, que Dramya empleó una estrategia de esconderse para que no fuera posible diligenciar el emplazamiento personal y que dejó de recoger comunicaciones escritas que les eran remitidas mediante correo certificado. Por tanto, solicitó que se declarara "No Ha Lugar" la solicitud desestimatoria presentada por el Peticionario.

El 13 de abril de 2026, el TPI emitió *Orden* por medio de la cual denegó la solicitud de desestimación de la *Sentencia* presentada por el Peticionario. Insatisfecho, Dramya presentó una "**Moción para Solicitar Reconsideración**" que fue declarada "No Ha Lugar" mediante *Orden* de 27 de abril de 2026. Aun inconforme, el Peticionario presentó el recurso de

epígrafe, por medio del cual le imputó al foro de instancia la comisión del siguiente error:

> **PRIMER ERROR**: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN AL DICTAR UNA SENTENCIA SIN JURISDICCIÓN POR NO HABERSE EMPLAZADO CONFORME A DERECHO A LA PARTE RECURRENTE Y EN SU CONSECUENCIA HABERLO DESPOJADO DE SU PROPIEDAD SIN QUE SE LE DIERA EL DEBIDO PROCESO DE LEY.

El 14 de mayo de 2026, la Recurrida presentó "**Oposición a Certiorari**"

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. 800 Ponce de León v. AIG, 205 DPR 163, 174 (2020); Mun. de Caguas v. JRO Construction, 201 DPR 703, 711 (2019). A pesar de ser un recurso procesal excepcional y discrecional, el tribunal revisor no debe perder de vista las demás áreas del derecho. Mun. de Caguas v. JRO Construction, *supra,* pág. 711.

Así, con el objetivo de ejercer de manera prudente nuestra facultad discrecional, es preciso acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40; Banco Popular de Puerto Rico v. Gómez Alayón, 213 DPR 314, 336 (2023). Esta norma cobra mayor relevancia en situaciones en las que no hay disponibles métodos alternos para asegurar la revisión de la determinación cuestionada. Íd. A esos efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari*. En lo pertinente, la precitada disposición reglamentaria, *supra*, dispone que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas

56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable la justicia, al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Íd.

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023). En lo pertinente, la precitada disposición reglamentaria establece lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Íd.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debe ser utilizado con cautela y por razones de peso. Pueblo v. Díaz de León, 176 DPR 913, 918 (2009). En ese sentido, el

Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. García v. Padró, 165 DPR 324, 334 (2005). También se ha definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Banco Popular de Puerto Rico v. Gómez Alayon, *supra*, pág. 13. En otras palabras, el adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. SLG Flores, Jiménez v. Colberg, 173 DPR 843 (2008).

**B.**

En nuestro sistema adversativo, el emplazamiento "representa el paso inaugural del debido proceso de ley que viabiliza el ejercicio de la jurisdicción judicial." Acosta v. ABC, Inc., 142 DPR 927, 931 (1997); Reyes v. Oriental Fed. Savs. Bank, 133 DPR 15, 22 (1993); Pagán v. Rivera Burgos, 113 DPR 750, 754 (1983). El emplazamiento persigue, primordialmente, dos propósitos: (1) notificar a la parte demandada en un pleito civil que se ha instado una reclamación judicial en su contra y (2) garantizarle su derecho a ser oído y a defenderse. Martajeva v. Ferré Morris y otros, 210 DPR 612, 620 (2022). De otra parte, el emplazamiento constituye el medio por el cual los tribunales adquieren jurisdicción sobre la persona del demandado, de forma tal que el emplazado quede obligado por el dictamen que finalmente se emita. Pérez Quiles v. Santiago Cintrón, 206 DPR 379, 384 (2021). Ante un emplazamiento defectuoso, el tribunal está impedido de actuar contra la persona del demandado y si lo hace, la sentencia que recaiga será nula por falta de jurisdicción sobre la persona. Reyes v. Oriental Fed. Savs. Bank, *supra*, pág. 21.

Los requisitos de un emplazamiento son de cumplimiento estricto, ya que su adecuado diligenciamiento constituye un imperativo constitucional

del debido proceso de ley. <u>Torres Zayas v. Montano Gómez *et al*.</u>, 199 DPR 458, 468 (2017), <u>Quiñones Román v. Cía. ABC</u>, 152 DPR 367, 374 (2000). A tales efectos, todo demandado tiene el derecho a ser emplazado "conforme a derecho y existe en nuestro ordenamiento una política pública de que la parte demandada debe ser emplazada debidamente para evitar el fraude y que se utilicen procedimientos judiciales con el propósito de privar a una persona de su propiedad sin el debido proceso de ley". <u>First Bank of P.R. v. Inmob. Nac., Inc.</u>, 144 DPR 901, 916 (1998).

En cuanto al diligenciamiento de los emplazamientos, las Reglas de Procedimiento Civil permiten el emplazamiento personal o mediante edictos. <u>Caribbean Orthopedics v. Medshape *et al*.</u>, 207 DPR 994, 1005 (2021). Aunque, como regla general, es requerido el emplazamiento personal como método idóneo para el tribunal adquirir jurisdicción, se ha reconocido como excepción, y ante circunstancias específicas, el emplazamiento por edicto. <u>Íd</u>. Según la Regla 4.6 de Procedimiento Civil, reguladora del emplazamiento por edicto y su publicación, se podrá emplazar mediante la publicación de un edicto cuando la persona emplazada: (1) esté fuera de Puerto Rico, (2) o estando en Puerto Rico, no pudo ser localizada después de realizar las diligencias pertinentes, (3) se oculte para no ser emplazada, o (4) cuando sea una corporación extranjera sin agente residente. 32 LPRA Ap. V, R. 4.6. En cualquiera de estas instancias, se requiere que la parte demandante demuestre, a satisfacción del tribunal mediante declaración jurada, las diligencias realizadas para llevar a cabo el emplazamiento personal de la parte demandada. <u>Banco Popular v. S.L.G. Negrón</u>, 164 DPR 855, 865 (2005).

La declaración jurada que a ese efecto se preste debe contener hechos específicos y detallados demostrativos de esa diligencia y no meras generalidades. <u>Íd</u>. Además, la razonabilidad y suficiencia de las gestiones efectuadas se medirá en función de si se trata de diligencias potencialmente efectivas para encontrar al demandado, por lo que dependerá de las circunstancias particulares de cada caso, las cuales el juez corroborará a su satisfacción antes de autorizar el emplazamiento

por edicto. <u>Lanzó Llanos v. Banco de Vivienda</u>, 133 DPR 507, 513-515 (1993). Sobre este respecto, se ha indicado que "es buena práctica inquirir de las autoridades de la comunidad, la policía, el alcalde, del administrador de correos que son las personas más llamadas a conocer la residencia o el paradero de las personas que viven en la comunidad". <u>Sánchez Ruiz v. Higuera Pérez <i>et al.</i></u>, 203 DPR 982, 988 (2020).

Luego de autorizado el emplazamiento por edicto, el demandante tendrá que cumplir con los requisitos establecidos en la Regla 4.6 de Procedimiento Civil, <i>supra</i>. En lo pertinente al caso de autos, el demandante deberá:

> […] dentro de los diez (10) días siguientes a la publicación del edicto [dirigirle] a la parte demandada una copia del emplazamiento y de la demanda presentada, por correo certificado con acuse de recibo o cualquier otra forma de servicio de entrega de correspondencia con acuse de recibo […] al lugar de su última dirección física o postal conocida. 32 LPRA Ap. V, R. 4.6.

De surgir alguna controversia en cuanto a la validez de una notificación realizada mediante edicto, se utilizará el criterio de "dirección razonablemente calculada". Este criterio federal fue adoptado por nuestro Tribunal Supremo de Puerto Rico en <u>Rodríguez v. Nasrallah</u>, 118 DPR 93 (1986), "para examinar si, a la luz de la información conocida por el remitente, la dirección de envío fue adecuada cuando esta se desconoce o se pone en duda". <u>Román Ortiz v. OGPe</u>, 203 DPR 947, 959 (2020). El mismo requiere que, para cumplir con la Regla 4.6 de Procedimiento Civil, <i>supra</i>, el demandante notifique dicho envío a la "última dirección conocida" que esté razonablemente calculada dentro de las circunstancias en que se encuentre, para notificar a la parte contraria. <u>Rodríguez v. Nasrallah</u>, <i>supra</i>, pág. 102. De igual forma, el más alto foro judicial requiere que los tribunales "salvaguarden el debido proceso de ley e indaguen, cuando menos, si la dirección provista pertenece o perteneció a la parte con derecho a ser notificada". <u>Román Ortiz v. OGPe</u>, <i>supra</i>, pág. 959. "De ahí que la corrección de la dirección de envío constituya otro factor a auscultar, pues no basta con notificar 'a cualquier dirección, sino, obviamente, a la dirección correcta'". <u>Íd</u>. (citando a <u>Ortiz v. ARPe</u>, 146 DPR 720, 724 (1998)).

Por otro lado, es harto conocido que, una vez expedido el emplazamiento, la Regla 4.3 de las de Procedimiento Civil establece que el promovente de la acción cuenta con ciento veinte (120) días para diligenciar el mismo, so pena de que se decrete la desestimación y archivo del pleito, sin perjuicio, en aquellas instancias en que sea la primera desestimación. 32 LPRA Ap. V., R. 4.3. En lo que respecta al emplazamiento por edicto, se ha resuelto que dicho plazo comenzará a transcurrir nuevamente desde el momento en que es autorizado y expedido por el Tribunal. Sánchez Ruiz v. Higuera Pérez *et al.*, *supra*, pág. 984. Así pues, "transcurridos los 120 días sin diligenciar los emplazamientos, el TPI está obligado a desestimar la demanda de forma automática, sin concesión de prórroga alguna". Bernier González v. Rodríguez Becerra, 200 DPR 637, 651 (2018).

**III.**

En su recurso, Dramya sostiene que procede la revocación de la *Orden* emitida por el TPI, mediante la cual denegó su solicitud para que se dejara sin efecto la *Sentencia*, toda vez que la misma es nula ya que no fue emplazado adecuadamente. Le asiste la razón.

Tal y como adelantamos en los acápites anteriores, el 13 de abril de 2023, la señora Rosa interpuso una "**Demanda**" en contra del Peticionario por incumplimiento de contrato. Del expediente electrónico ante el TPI se desprende que el 21 de abril de 2023 se expidió el emplazamiento personal a nombre de Dramya y que el 17 de mayo de 2023 la Recurrida solicitó emplazar por edictos a dicha entidad corporativa. Al examinar la declaración jurada presentada para justificar su solicitud, notamos que la misma es insuficiente en derecho. Esto porque la única gestión física que la emplazadora acreditó para notificar al Peticionario de la presentación del pleito en su contra fue personarse a la Urbanización Sans Souci, Calle 1 A-7 en el Municipio de Bayamón, con el propósito de diligenciar el emplazamiento personal dirigido al ente corporativo, por conducto de su presidente, el Sr. Aymard Negrón Encarnación. Adicionalmente, dicha emplazadora expuso que hizo una búsqueda electrónica de la corporación

y corroboró que el señor Negrón Encarnación era el presidente, tesorero y agente residente y que la antedicha dirección era correcta.

Fueron esas expresiones las únicas que se detallaron en la aludida declaración jurada que movieron al TPI a, posteriormente, emitir la *Orden* autorizando el emplazamiento por edicto de Dramya.

Al examinar los documentos que obran en los autos, concluimos que las gestiones efectuadas por la emplazadora no fueron suficientes ni razonables a la luz de las circunstancias particulares del presente caso. Primeramente, el expediente revela que las partes de epígrafe tenían una relación comercial que ubicaba a la señora Rosa en mejor posición para efectuar gestiones adicionales para emplazar personalmente a la corporación. Sobre todo, cuando nuestro estado de derecho provee varias alternativas para poder diligenciar un emplazamiento personal dirigido a una corporación. Nótese que una parte demandante puede emplazar a un ente corporativo de las siguientes formas: (1) por conducto de un oficial, gerente administrativo, agente general o a cualquier otro agente autorizado por nombramiento o designado por ley para recibirlo, de conformidad con la Regla 4.4 (e) de Procedimiento Civil, 32 LPRA Ap. R. 4.4 (e); y (2) el Artículo 12.01 de la Ley Núm. 164, *supra*, posibilita el emplazamiento personal de la corporación en el domicilio o la residencia habitual de alguna de las personas mencionadas en la primera alternativa, o en la oficina designada u otra sede de negocios de la corporación en Puerto Rico, 14 LPRA sec. 3781.

Por tanto, un examen comprensivo y detenido del expediente, nos conduce a la conclusión de que no procedía la expedición del emplazamiento por edictos a nombre de Dramya y, por tanto, el TPI nunca adquirió jurisdicción sobre su persona. Ahora bien, aun si hiciéramos abstracción de lo anterior y entendiéramos que procedía la expedición del emplazamiento mediante edicto, existe otro fundamento para dejar sin efecto la *Sentencia* emitida el 14 de mayo de 2024. Lo anterior, porque fue la propia señora Rosa la que unió a su "**Oposición a Desestimación**" la información de la corporación que se utilizó de referencia al momento en

que se diligenció el emplazamiento personal, por conducto del señor Negrón Encarnación. Al examinar dicho anejo a su comparecencia, notamos que además de la dirección en la Urbanización Alturas de San Souci, la Recurrida sabía de la dirección postal registrada en los archivos del Departamento de Estado, a saber: PO Box 1664, Carolina PR 00984. Sin embargo, y a pesar de ello, el emplazamiento por edicto publicado en el periódico El Nuevo Día el 26 de mayo de 2023 únicamente fue remitido a la dirección en la Calle 1 A-7, Urbanización Alturas de San Souci y no a la dirección postal que la propia Recurrida conocía.

No olvidemos que para cumplir con la Regla 4.6 de Procedimiento Civil, *supra*, el demandante está en la obligación de notificar al demandado a la "última dirección conocida" que esté razonablemente calculada dentro de las circunstancias en que se encuentre. Rodríguez v. Nasrallah, *supra*, pág. 102. "De ahí que la corrección de la dirección de envío constituya otro factor a auscultar, pues no basta con notificar 'a cualquier dirección, sino, obviamente, a la dirección correcta'". Román Ortiz v. OGPe, *supra*, pág. 959.

En el presente caso, estamos imposibilitados de concluir que la dirección a la cual la señora Rosa remitió el emplazamiento por edicto expedido fue razonablemente calculada. Lo cual implica que estamos en la obligación de concluir, por un fundamento adicional, que el Peticionario no fue emplazado adecuadamente. Siendo esta la realidad del caso, la *Sentencia* dictada el 14 de mayo de 2024 fue nula y nunca surtió efecto, puesto que se emitió sin haber adquirido jurisdicción sobre la persona del demandado.

Entonces, habiendo arribado a dicha conclusión, y a la luz de la Regla 4.3 (c) de Procedimiento Civil, *supra*, procede que decretemos la desestimación del pleito, sin perjuicio, puesto que ha transcurrido en exceso del plazo de 120 días para que Dramya fuera efectivamente emplazada.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, *expedimos* el auto de *certiorari* y *revocamos* la *Orden* recurrida.

En consecuencia, se desestima, sin perjuicio, la "**Demanda**" de autos al amparo de la Regla 4.3 (c) de Procedimiento Civil, *supra*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones